The opinion of the court was delivered by
Nicholls, C. J.
Plaintiff alleges that in due time it made return for purposes of State and municipal taxation of its property, and that the assessment of all of its property, real and personal, and franchises was made and completed in regular and due course of law, as provided by the statutes, by the Board of Assessors, at a total valuation of two million two hundred and forty-four thousand four hundred and forty dollars; that while it considered this very high it did not protest, but accepted and acquiesced therein; that on the 6th of April, 1893, the corporation was notified through its president *1150 to appear before a committee of the City Council styling itself the Committee on Budget and Revision of Assessments, on the 8th of April, 1893, at 11 o’clock A. M., pretending to act under the provisions of See. 26 of the revenue act of 1890, being Act No. 106 of that year, then and there to show cause why an increase should not be placed upon the assessment of its personal property over and above that made by the Board of Assessors; that it had no notice or information of any specific character as to the particular property upon which that committee proposed or intended to make an increase of assessment, but through the president it answered said notice in person, appearing before the committee on the date and at the time mentioned, when he was informed that it was intended to increase the assessment placed upon the franchise so called of the corporation by the sum of one hundred thousand dollars; that its president protested in the meeting of the committee against any increase, and after discussion he retired, but the action of the committee was not announced, nor was the corporation informed or notified what, if any, action the committee would finally take; that for the reasons above stated and the informal manner in which the committee proceeded, the Company had no opportunity to file any formal or written protest before it, but in view of the provisions of said Sec. 26, which require that the revision committee shall report its action to the City Council for appróval or rejection, it addressed a formal written protest to the Mayor and Common Council in anticipation of a report that said committee might make against any contemplated increase; that they had no other means or opportunity than this to protest; that at a meeting of the City Council held on the 17th of April, being the same meeting at which the corporation’s protest was presented, the Committee on Revision made a report containing simply the result of its conclusions on a large number of assessments under consideration, and stating the amounts to which they had increased or reduced various assessments without any other reason or explanation for its action, among which was an increase of one hundred thousand dollars on the franchise of the plaintiff corporation; that the City Council did not heed the protest, but approved the increase, and the same stands now assessed against it as a basis for State and municipal taxes for the year 1893; that the increase upon the valuation of the franchise in excess of its just and true value, which had been previously fixed by the Board of Assessors is absolutely wanton and arbitrary, aseer *1151 tained and adopted upon no rule or principle of computation, unjust and oppressive, for the reason that in making said increase on said franchise, the committee followed no fixed or general rule, but acted arbitrarily in reference to each and every corporation enjoying franchises of money value, reducing same and only increasing the present plaintiff corporation without basis or other rule of action than the arbitrary will of the committee; that as a matter of fact said increase is excessive in value and should be reduced to the amount originally fixed by the Board of Assessors upon the movable property and franchise, to the sum of one million seven hundred and ninety-six thousand six hundred and fifty dollars.
That the attempted increase is illegal, null and void, because the conditions provided by the law under which the power of the Committee on Revision or of the Oity Council arises did not exist; that under Sec. 26 of the Revenue Act, under which the committee acted, it had power to increase only assessments imperfectly or improperly made; that there was no notice, allegation or pretence that the said assessment was imperfectly or improperly made; that in fact the valuation of the Board of Assessors was fixed after full hearing, in regular form, in compliance with all the requisites of the law. That the said attempted increase was null and void for the reason that the committee did not comply with the requirements of Sec. 26, of Act No. 106 of 1890, particularly in this:
1. There was no hearing or conference between the committee and the Board of Assessors in reference to any contemplated increase by the committee, whereas the law expressly provides that the Board of Assessors shall be heard before any increase in valuation can be made and reported by the committee.
2. The action of the Committee of Revision, as well as that of the Common Council at its meeting on the 17th April, 1893, at which the report of the committee was received and approved, was absolutely null and void, because the said committee, or the members constituting the same, had not qualified as required by law for the purposes of acting as a Committee of Revision of Assessments, and particularly because the report of the committee did not contain the affidavit of the committee, or any members of the committee, or of a majority of the committee. That the failure on the part of the committee to attach their special affidavit to the report made to the council, as required by the twenty-sixth section of Act No. 106, and upon which *1152 report the council was required to act, either by way of approval or rejection, rendered the action taken absolutely null and void, and the increase referred to invalid and of no effect.
Plaintiff therefore alleges that the increased assessment of one hundred thousand dollars on the franchise or franchises should be canceled for the reason that the same is excessive, inequitable and unjust on its merits, and, secondly, that in any event the proceedings on the part of the Committee of Revision and of the City Council purporting to effect said increase, is null andivoid'for the reasons above set forth and should be so decreed.
Plaintiff declares that it has paid the taxes of 1893 upon the assessment originally made by the Board of Assessors, reserving the right to make the present contest over the increase made. The prayer of the petition is that the Board of Assessors, the State Tax Collector of the First District and the city of New Orleans be cited, and that there be judgment ordering the cancellation of the increase upon the assessment of the franchise attempted to be made through the Committee of Revision and the City Council and decreeing the same in any event to be absolutely null and void for failure of compliance with the requirements of the law in the premises.
The city of New Orleans, after pleading the general issue, further answering, said that it acted under the provisions of law in increasing the plaintiff’s assessment, because the assessment made by the Board of Assessors was insufficient in amount, which fact was within the knowledge of the committee on budget and assessment, and in making the supplemental assessment all the forms of law were complied with. It prayed for judgment declaring the supplemental assessment to be valid and dismissing plaintiff’s demand.
The other defendants for answer filed a general denial.
Judgment was rendered in the District Court rejecting plaintiff’s demand and the plaintiff has appealed.
The twenty-sixth section of Act No. 106 of 1890, referred to in the pleadings, is as follows:
“All tax-payers in^the parish of Orleans shall have the right to appear before a standing committee on assessments of the City Council of New Orleans between the 21st of March and the 10th day of April, inclusive, of the year in which the assessments are made, and in the parishes before the Board of Reviewers, as provided for in this act, during the sessions of said board, and be heard concerning the *1153 descriptions oí the property listed and the valuation of the same as assessed, and they shall have the right of testing the correctness of their assessments before courts of justice in any procedure which the Constitution and laws may permit, but the action to test such correctness shall be instituted on or before the 1st day of November of the year in which the assessment is made. In all suits for the reduction of assessments the State Tax Collectors of the respective parishes shall be made parties.
“The said Committee on Assessments shall meet on the 21st day of March, or if a holiday, then on the next succeeding day not a legal holiday, of each year, in the city of New Orleans, to consider and examine into the applications of those owners of assessed property who believe the assessor’s valuation to be in excess of and beyond the actual cash value of the property assessed. Said committee shall determine upon said applications, but their duties are confined entirely to the question of valuation and description, and report their action at once to the City Council for approval or rejection; said report to contain the affidavit of a majority of the committee that the valuations so fixed are the valuations provided by law, and decisions by the. council shall be final unless set aside in accordance with Art. 203 of the Constitution. The said Committee on Assessments shall be, and are hereby empowered, to increase any assessment imperfectly dr improperly made; provided, that before said increase is made the tax-payer be served with notice to appear before said committee within three days and show why such increased assessment should not be made. In passing upon any application for reduction in valuation, and before determining upon any increase in valuation, tbe Board of Assessors must be heard in reference thereto, and they are expected to be present at all sessions of the committee. No application to be considered by the said committee unless said application has been first made to the board and refused. In all cases the action of said committee to be finally reported back from the council to the assessors, not later than the 18th of April, or the revision to be null and void.”
On the 6th of April, 1893, the Committee on Assessments served on the plaintiff a notice to the following effect:
“You are hereby notified, pursuant to the provisions of Act No. 106 of the General Assembly of 1890, Sec. 26, that this committee proposes to increase the assessment now placed by the Board of *1154 Assessors on your personal property situate in the Fifth Assessment District, and to show cause on the 8th day of April, 1893, at 11 A. m., why the said increase should not be made.”
No notice of this proposed action appears to have been given to the Board of Assessors.
On the 11th of the same month the plaintiff addressed the following communication to the Mayor and Common Council of the city :•
“Gentlemen — About ten days ago the president of the New Orleans Gaslight Company was served with a notice purporting to come from the Committee on Revision of Assessments to appear before it and show cause why the assessment upon the property of the New Orleans Gaslight Company should not be increased. I appeared before the committee protesting against any increase, and expressing my willingness to accept as final the assessment made by the Board of Assessors, although even that was higher than it should be.
“I have not been officially advised of any action on the part of the committee, but learn that the committee has undertaken to increase the assessment on franchise one hundred thousand dollars, and that its report is before your honorable body for approval or rejection, as per Sec. 26 of Act No. 106 of 1890. I deem it my duty, both, by reason of my conviction of the wrong contemplated by this increase of assessment, and for the purpose of reserving the legal rights of the New Orleans Gaslight Company, to contest the same before the courts, to solemnly and earnestly protest against this assessment, and ask its rejection by your honorable body. The Sec. 26 above referred to gives your committee and yourself the power to increase an assessment ‘imperfectly or improperly made.’ It was not contended that there was an imperfect or improper assessment, and no investigation was had developing any facts justifying the increase attempted by your committee. The same is purely arbitrary and without foundation of fact to stand upon. And your petitioner further represents that it is utterly null and void and illegal, as not coming within the power of your honorable body through your committee, under the text of the law, and for other reasons which will be duly urged if this protest is unheeded and petitioner compelled to resort to the courts of law.”
This communication was submitted to the City Council by the Mayor at its session of April the 18th, and immediately referred to *1155 the Committee on Revision of Assessments. No further notice or action upon it seems to have been taken by the council.
The council had in the meantime held a session on the 11th of April, at which the “Committee on Revision of Assessments” made a report containing changes made by it in the matter of ninety-five assessments.
The report having been received, was recommitted to the committee under the rules.
On the 18th of April the council, at its session of that date, took up the report of the committee, and the same was as a whole adopted without discussion, a motion to take up and consider the various items of the report separately having been lost.
The chair then instructed the clerk of the council to deliver the report of the Committee on Revision of Assessments, taking therefor the receipt of the secretary of the Board of Assessors, which was done, as the minutes of the proceedings of that day contain a copy of the receipt for the same by Eendel Horn, signing as secretary of the Board of Assessors.
The Board of Assessors had held a session itself on the 18th, but had adjourned after having authorized and directed Mr. Fendel Horn to receive the report from the council.
Our knowledge of what took place at the various sessions of the “Committee on Revision of Assessments” is of the most meagre kind, and derived entirely from the testimony taken on the trial of this case, the committee evidently not considering itself called upon to keep any record of its proceedings, or to assign any reasons in making its report to the Common Council as to the evidence upon which it acted or the grounds upon which it proceeded.
We think it very clear that the Board of Assessors was never officially notified that the committee proposed to increase or alter its assessment of the plaintiff’s property, and called upon to show cause, if any, it had why this should not be done, and that the only action taken in the matter, so far as the State assessors were concerned, was through informal desultory conversations with the president of that board, or some of its members. The statute of 1890 requires, both on matters of reduction and of increase of assessment, that the Board of Assessors should be “ heard in reference thereto” before the revision committee reaches any determination in the premises. We are of the opinion that a formal notice, such as *1156 is given to the individual tax-payer, should in each case of proposed alteration be given to the Board of Assessors, and that it is the duty of that board, in each case, to make a reply in writing, giving explicitly and in detail its views in regard to the alteration and the reasons and grounds upon which these views are based; that it is the duty of the revision committee to receive and file this answer, and after taking it in consideration, in connection with such other facts relative to the subject matter as may be brought before it, to annex it to its report, and forward it to the Common Council as part of the same.
Knowledge of the Board of Assessors brought to it through the mere presence of either all or some of its members at sessions of the committee is something other and different from the knowledge of the board conveyed to it through formal notice. The presence of the board at the meeting is suggested by the law as a thing proper to be done, but it is not exacted, while notice is a matter of obligation, as is the duty of the board to reply to the notice.
We think the revision committee greatly erred in supposing it was under no obligation to keep a record of its proceedings and of the evidence upon which it acted. It is very true the statute does not in terms, order it so .to do, but the obligation to do this results from the nature of the duty it was performing.
Any action which the committee might take would not be final. Its work was purely by way of investigation and inquiry. Its recommendations had to be submitted for rejection or approval to the council, and it was the conclusions reached by the council, not those of the committee, which determined whether particular assessments should be changed or not. The Common Council was not to be amere automaton in this matter and called upon only to authenticate what the committee had done, but it was expected itself to bring to bear both knowledge and judgment in the premises.
It is impossible for it to do so when the committee fails to communicate to it any of the reasons and any of the evidence upon which its recommendations rest, and only forwards to the main body conclusions of its own and not facts. We think the report which the committee filed should have been accompanied by the affidavits of a majority of the committee to the fact “ that the valuations fixed by it are the valuations provided by law.” We see no reason why a distinction should be made in this respect between a report calling for reductions of assessment and those calling for an increase. If the oath *1157 taken by the members of the committee as members of the council was deemed a sufficient guarantee for the fidelity of their official action as committeemen in the case of increase, as suggested by defendants, it certainly should neither be less nor more so in the matter of reductions. The General Assembly has thought proper to require an additional oath, probably so as to thoroughly and forcibly impress them with. their special and direct responsibility for the matters placed in their charge. We think it intended this affidavit should be made by the committeemen whether their report was to reduce or to increase assessments.
Though the General Assembly did not find occasion to repeat or reiterate these requirements it is clearly and easily inferrible from the text and context, when construed together, that such was the legislative purpose and intent. Only one single report is spoken of by the statute and to this single report the affidavit is ordered to be attached.
We took this same view in State vs. Lochte, 45 An. 1045, where an argument very similar to that which is now urged by defendants was pressed upon us. In the absence of the affidavit and of the declaration certified to by-’a majority “that the values as fixed by the committee were those provided by law,” and in the absence of any evidence or reasons, the committee was free to change arbitrarily of its own will, or through favoritism, dislike or prejudice such assessments as it might select for that purpose. In the case at bar the Common Council without any basis whatsoever, except the bare report itself of the committee, fortified neither by affidavit, certificate, declaration, reasons or testimony, took up and adopted as a whole, without investigation or examination, so far as their proceedings show, ninety-five alterations of assessment made by the committee, most of them reductions. Such a condition of things was not contemplated by the General Assembly. In examining the proceedings of the council of the 18th of April we notice that the paper delivered to the secretary of the Board of Assessors by the clerk of the council was simply the report of the Committee on Revision of Assessments. When the statute required the action of that committee to be reported back from the council to the assessors not later than the 18th of April, it contemplated that the action of the council on that report should be reported back as well as the report itself. The report per se, as we have said, has no official force. The Committee *1158 on Revision of Assessments of the Common Council and the Common Council itself, have in their course and action departed so widely from that pointed out by law as that under which they were to act that that action can not be sustained or maintained. We do not mean to intimate that an increase of plaintiff’s assessment could not properly and justly have been made and to the extent which it was made by the committee and the council, or that either acted oppressively or arbitrarily, but both were called to act under limited powers and under express limitations and restrictions. Where powers conferred by statute have not been exercised under the circumstances and requirements of the statute, the acts done fail for want of authority, even though they would have been sustained as right had legal conditions as to action been complied with.
For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the action of the Committee on Budget and Revision of Assessments increasing the assessment for the year, 1893, upon the franchise of the plaintiff corporation, and the action of the Common Council of the city of New Orleans in adopting the said action •of the said committee, contained in its report to said council, be and the same are declared null and void, for failure by both the said committee and the said Common Council to comply with the requirements of the law in respect to the revision of assessments, and it is further ordered that the Board of Assessors cancel on their books or records the said attempted increase of assessments upon the plaintiff’s franchise.